LEWIS L. TRAUBE v. THE STATE.

CRIMINAL LAW.  *Manslaughter.   Surplusage in verdict.*

  T. was indicted and tried for murder.   The jury rendered the following verdict:
    " We, the jury, find the defendant guilty of manslaughter in the second degree."   A motion was made in arrest of judgment, upon the ground that the jury did not convict the defendant of any offence known to our laws, there

being no degrees of manslaughter in this State. The motion was overruled.
The words in the verdict, "guilty of manslaughter," were a full and com-
plete finding of the issue submitted, and the court properly treated the super-
added words, "in the second degree," as surplusage. If a verdict contains a
finding which is not embraced in the issue, or contains words which are with-
out meaning, and, after striking out or disregarding such irresponsive finding
or such meaningless words, there still remains a perfect finding responsive to
the issue, the verdict should be upheld and judgment pronounced accordingly.

ERROR to the Circuit Court of Lawrence County.

Hon. A. G. MAYERS, Judge.

The case is stated in the opinion of the court.

*D. W. Hurst*, for the plaintiff in error, made an elaborate
oral argument, but filed no brief.

*T. C. Gatchings*, Attorney-General, for the State.

The finding is a good verdict of manslaughter, and the
words, "in the second degree," are mere surplusage. The
jury, by their verdict, acquitted the defendant of the charge of
murder, but found him guilty of manslaughter, as they had
the right to do under the indictment. Under the issue, no
question as to the degree of manslaughter was involved, for
the law recognizes no degrees of that offence. If a jury find
facts not submitted to them, and also find the issue presented,
such extra-judicial finding will be rejected as surplusage, and
judgment rendered on that part of the verdict in which the issue
is found. *Utile per inutile non vitiatur.* See *Bacon* v. *Cal-
lender*, 6 Mass. 304; *Hawks* v. *Crafton*, 2 Burr. 700; 3 Co.
Lit. 539; *Grover* v. *Turner*, 28 Md. 605; Hob. 127–129;
*Pettis* v. *Bingham*, 10 N. H. 519; *Tuley* v. *Mauzey*, 4 B.
Mon. 7; *Armstrong* v. *The People*, 37 Ill. 462; *Simmons*
v. *Rarden*, 9 Ga. 543; *Huntington* v. *Ripley*, 1 Root, 320;
*Windham* v. *Williams*, 27 Miss. 317; *The State, ex rel. Web-
ster*, v. *Knight*, 46 Mo. 83; 20 Cal. 435; *Tucker & Stiles* v.
*Cochran*, 47 N. H. 54; *Cooper* v. *United States*, 1 Morris
(Iowa), 261; *Patterson* v. *United States*, 2 Wheat. 225;
*Dunlap* v. *Hayden*, 29 Ind. 304; *Amidon* v. *Gaff*, 24 Ind.
129; *Richmond* v. *Talmadge*, 16 Johns. 307; *The State* v.
*Williams*, 8 Iowa, 536; *Dyer* v. *The Commonwealth*, 23 Pick.

402 ; *Rex* v. *Williams*, 2 Camp. 646 ; *The Commonwealth* v. *Fischblatt*, 4 Metc. 354 ; *Dozier* v. *Inman*, 30 Mo. 216 ; *Kouns* v. *Lawall*, 2 Bibb, 236 ; *Wells* v. *Garland*, 2 Va. Cas. 473 ; *Ranney* v. *Bader*, 48 Mo. 540.

*T. C. Catchings*, Attorney-General, also made an oral argument.

CHALMERS, J., delivered the opinion of the court.

Plaintiff in error was indicted for murder. The jury returned a verdict in the following words : " We, the jury, find the defendant guilty of manslaughter in the second degree." Motion in arrest of judgment was made, upon the ground that the defendant had been convicted of no offence known to the law, there being no degrees of manslaughter in this State. The motion was overruled, and the defendant sentenced, as upon a conviction of manslaughter, to seven years' imprisonment in the penitentiary. This action of the court is the only error assigned.

Upon the part of the plaintiff in error it is insisted that the verdict is a nullity. Upon the part of the State it is urged that it is a good verdict of manslaughter, the words " in the second degree " being senseless, and therefore to be rejected as surplusage. Surplusage in a verdict is thus defined by Lord Coke : " If the jury give a verdict of the whole issue, and of more, that which is more is surplusage, and shall not stay judgment ; for *utile per inutile non vitiatur*."

It is doubtful whether a more complete and perfect definition can be given. Let us analyze it. The verdict must find the whole issue ; if it does not, it is no verdict. If it does find the whole issue, and finds something additional, that which is additional may be disregarded, and judgment may be pronounced upon that which was responsive to the issue.

There are countless examples of this principle in civil cases, and many, likewise, in criminal. We will give a few of those in criminal cases : —

Upon an indictment against J. B. Boggs, the verdict was, —

"We, the jury, find the defendant, J. M. Boggs, guilty of manslaughter." *Held*, that the insertion of defendant's name in the verdict was unnecessary, and might be treated as surplusage, and that therefore the giving of the wrong name did not vitiate the verdict. *The People* v. *Boggs*, 20 Cal. 432.

Upon an indictment for an assault upon M., with intent to ravish her, the verdict was : " We, the jury, find that defendant was not guilty of an assault with an attempt to commit a rape, but that he was guilty of an assault upon, and improper intercourse with, the said M.," etc., etc. *Held*, that the indictment for an assault with intent to ravish embraced a charge of simple assault; that the verdict found a simple assault, with the added words, " and improper intercourse with the said M." *Held*, that these additional words might be treated as surplusage, and the defendant sentenced for a simple assault. *The Commonwealth* v. *Fischblatt*, 4 Metc. 354.

A verdict found the prisoner guilty, and fixed his punishment at imprisonment in the penitentiary, " together with a fine of one hundred dollars." The jury had no right to impose a fine. *Held*, that the words which assumed to do so might be treated as surplusage, and the judgment pronounced on the balance of the verdict. *Armstrong* v. *The People*, 37 Ill. 459.

An indictment charged that certain specified goods of E.'s " had been burglariously stolen, and that the defendant had received said goods, knowing them to have been stolen. The verdict was : " The jury find the said D. guilty of receiving and aiding in concealing stolen goods, knowing them to have been stolen, but not knowing them to have been burglariously stolen." The verdict was held bad, upon the ground alone that the prisoner was charged with receiving the stolen goods of E., and was found guilty only of receiving stolen goods generally, with nothing to indicate that they were the goods laid in the indictment. It was said, however, that, if the jury had found the issue submitted, the verdict would not

have been vitiated by any words of limitation or qualification which still left a perfect finding on the issue. The sole fatal defect was the failure to identify the goods as being those laid in the indictment. *Dyer* v. *The Commonwealth*, 23 Pick. 402.

The defendant was indicted for an assault with intent to commit murder. The verdict was: " We, the jury, find the defendant not guilty of an assault with intent to kill and murder as charged, but guilty of an assault in the attempt to commit manslaughter on Jacob Webster." *Held*, a good verdict of guilty of a simple assault, the words, " in the attempt to commit manslaughter," being merely descriptive of the opinion which the jury entertained of the circumstances of the assault, but conveying no legal meaning, because they were descriptive of no offence known to our laws, there being no such crime as an assault in an attempt to commit manslaughter. It was said, therefore, that the words no more affected the legal meaning of the verdict than if the verdict had been, " guilty of an assault in the attempt to go to church." They were rejected as surplusage, and the defendant sentenced for a simple assault. *Gibson* v. *The State*, 38 Miss. 295.

The doctrine deducible from these and other cases is, that there must be a perfect finding of the issue submitted; and if there be such finding, judgment will be pronounced, regardless of the fact that the jury have found also some other matter, not submitted, or have added to their verdict certain words of qualification which do not legally affect the perfect finding. The above instances sufficiently illustrate that the good finding will not be affected by a superadded unwarranted finding. It must be equally evident that it will not be affected by words which do not vary the legal effect, — as if, for instance, to a verdict of murder they added the words, " and that the act was maliciously done," or to a verdict of manslaughter, the words, " without malice." In these instances the added words are tautological only, merely repeating in another form the same idea. But suppose to words which import a perfect finding

of the issue submitted there be added words which, however significant in other connections, are utterly senseless and without meaning where found, as if the verdict was, "We, the jury, find the prisoner guilty as charged in the seventh heaven," or "in the arc of a great circle." It cannot be doubted that these senseless and unmeaning phrases would be disregarded, and judgment pronounced on the otherwise perfect verdict. To the rule, then, already announced, that a superadded finding, not embraced in the issue, will be treated as surplusage, we may safely add that the same course will be adopted with regard to words that convey no meaning whatever, and which, therefore, exert no legal effect upon the balance of the verdict. If, after they are stricken out, or left out of view, there still remains a full and perfect finding, judgment will be pronounced.

Let us bring the verdict in this case to the test of these rules. The prisoner was indicted for murder, which includes a charge of manslaughter. The verdict is, "guilty of manslaughter in the second degree." It meets the requirement of being a full and complete response to the charge, by the words, "guilty of manslaughter;" but there are added the words, "in the second degree." Do these words convey any meaning? Have they any legal effect? Do they indicate that the jury did not convict of manslaughter, but of something less, which they designated "manslaughter in the second degree?" We agree with counsel for plaintiff in error, that while the court may reject as surplusage any superadded finding that seeks to convict of something more than the offence charged, it cannot disregard words that have the legal effect of lessening the charge, or of so qualifying the otherwise perfect finding as to make it mean less than it otherwise would. If, therefore, it be true that the words, "manslaughter in the second degree," mean any thing less than the word "manslaughter" alone would, we concede that we cannot disregard them.

How are we to arrive at the conclusion that any thing less

than a conviction of manslaughter has been rendered in this case? Neither by the common law, nor by the statute law of this State are there any degrees in manslaughter. The word " manslaughter " embraces every unlawful and punishable homicide without malice. It includes all the various shades or degrees of guilt which, in the eyes of the moralist, may attach to any killing less criminal than murder. If this verdict had been brought into an English court in the days of Coke or of Sir Matthew Hale, the words, " in the second degree," would have conveyed no more intelligent idea than the words, " in the second generation," or " in the second story," if found in the same connection. There can be no doubt that in an ancient common-law court, before degrees of manslaughter had been imagined or devised by statutory law-givers, these words would have been treated as surplusage, and judgment pronounced as upon a verdict for manslaughter. But in this respect the common law prevails here, wholly unaffected by the fact that in other States, and even in this State more than twenty years ago, different degrees of manslaughter existed, with different punishments annexed to each degree. The obnoxious words, therefore, are as destitute of legal meaning in this verdict as if annexed to a verdict of " not guilty." If these words, " in the second degree," were annexed to a verdict of " not guilty " in a criminal case, or to a verdict " for the defendant " in a civil case, or to a verdict of " guilty " upon an indictment for assault and battery, or for rape, there can be no question that they would be treated as surplusage. Sup pose to a verdict of " guilty as charged," upon an indictment for rape, the words, " in the second degree," were added. It seems clear that they would not affect the verdict. Why does this appear clear? Because no State or nation, so far as we are aware, ever recognized degrees in rape. But if no law in this State recognizes degrees in manslaughter, how can the result be different? But if our minds could, unaided by statute, conceive of degrees in manslaughter, it would by no means follow that a finding of guilty of manslaughter in the second

degree would necessarily be indicative of a less grade of offence than if the verdict was, guilty of manslaughter in the first degree, or of manslaughter generally. If the Legislature should determine to establish degrees in manslaughter, it would be entirely competent for them to designate the graver degrees by the higher number, so that the lowest degrees should be the first, and the higher ones should be distinguished by higher numerals. Such an arrangement would neither be improbable nor unnatural.

The argument, therefore, that, by the use of the words, "in the second degree," the jury have indicated their conclusion that the defendant was guilty of something less than manslaughter in the first degree, or manslaughter generally, is untenable.

Our conclusion is that the words are unmeaning, and in no manner affect the perfect finding of manslaughter contained in the previous portion of the verdict. They were properly treated as surplusage, and the motion in arrest of judgment was properly overruled.

The recurrence in this court, recently, of several cases where the Circuit Courts have received imperfect verdicts, or verdicts not in proper form, induces us to call the attention of the circuit judges to the importance of closely inspecting every verdict before it is received. The power of the court to re-submit the verdict to the jury, with proper instructions as to putting it in proper form, is undoubted, and should always be exercised where there is a possibility of a doubt as to its legal sufficiency in the shape presented.

Judgment affirmed.

SIMRALL, C. J., doubts whether the jury intended to find the defendant guilty of the crime charged in the indictment. The qualifying words of the verdict indicate an unwillingness to respond directly to the issue, but an intention to find specially.