. DAVID SMITH *v*. STATE.

[65 South. 498.]

1. CRIMINAL LAW. *Instructions. Form of verdict. Trial. Construing instructions together. Verdict. Form and requisites. Surplusage.*

An instruction for the state in a murder case, that the jury may "if warranted by the evidence" find defendant not guilty, is not misleading, where numerous other instructions for the defendant, informed the jury that it was their duty to acquit the defendant, if they had any reasonable doubt of his guilt arising out of the evidence or the want of evidence in the case.

2. SAME.

In order to arrive at the proper meaning of an instruction, all the instructions both those given for the state and those given for the defendant must be considered together.

3. VERDICT. *Form and requisites. Surplusage.*

Where in a prosecution for murder, the jury were plainly instructed as to the form and effect of their verdict and returned the following verdict, "We, the jury, find the defendant guilty as charged, but disagree as to the punishment and ask the mercies of the court" and when the verdict was returned the jury were polled and answered that this was their verdict, and there was no request made to the court for inquiry as to what was meant by the verdict, the court was correct in treating that part of the verdict "and ask the mercies of the court," as surplusage.

APPEAL from the circuit court of Tishomingo county.

HON. CLAUDE CLAYTON, Judge.

David Smith was convicted of murder and appeals.

The facts are fully stated in the opinion of the court.

*Bennett & Elledge,* for appellant.

Referring to the third assignment of error which is: that the court erred in giving the fifth instruction given for the state, the last paragraph of which reads as follows: Or they may return, if warranted by the testimony,

the following verdict: "We the jury find the defendant not guilty." We do not understand that the jury should be warranted by the testimony in order to acquit. They may acquit for the lack of testimony or evidence. Is a defendant required to prove his innocence? We submit that the instruction amounts to informing the jury that the defendant is required to meet testimony, whether sufficient to convict or not, before they would be warranted in bringing in a verdict of not guilty.

It may be urged that the error in this instruction, if any, was and is cured by instructions for the defendant. We contend that the instruction is such that it is fatal error to give it and no amount of instructions for the defendant could cure the error. Who is in a position to say that under all the circumstances in this case the defendant was not prejudiced by this instruction when the defendant staked his case on a conviction as charged or an outright acquittal?. The defendant was either guilty as charged or he was entirely innocent. Refering now to the fourth and all subsequent assignments of error, all of which go to the form and sufficiency of the verdict—to the contention that no verdict has been rendered in this case.

A jury verdict is one thing, while the language used to convey that verdict into court is quite another thing; the jury verdict is the meeting of the minds of twelve jurors, on the issue presented to them by the parties, in the light of the law as given them by the court in instructions; the language used by the jury is but the vehicle for conveying the verdict to the court. The jury in this case returned into court the following: "We, the jury, find the defendant guilty as charged but disagree as to the punishment and ask the mercies of the court." The jury in this case was instructed that: The court charges the jury for the state that they may return either of the following verdicts in this case if warranted by the testimony: First: "We, the jury, find the defendant

guilty as charged" in which event it will be the duty of the court to sentence the defendant to be hanged.  Second: "We, the jury, find the defendant guilty as charged but disagree as to the punishment." In which event it will be the duty of the court to sentence the defendant to the penitentiary for his natural life.  Third: "We, the jury, find the defendant guilty as charged" and fix his punishment at imprisonment in the penitentiary for life.  In which event it will be the duty of the court to sentence the defendant to the state penitentiary for his natural life.

In the face of the second and third paragraphs of this charge, can it be said that the jury in this case found by their verdict that this defendant should be sentenced to the pentitentiary for his natural life?  The jury in this case was thoroughly instructed as to the form of their verdict and the consequent penalties that would follow the bringing in of either of said verdicts, and in view of this fact we insist that the recommendation to mercy cannot be treated as surplusage.

Under the circumstances of this case and the aforesaid instructions, paragraphs two and three, we think that, as a matter of fact, the jury never reached a verdict and never returned a verdict into court.  The concurrence of the minds of twelve jurors is necessary to a verdict and the defendent is entitled to this or to a mistrial. As stated in some of the cases the verdict is vague, ambiguous and clouded.  *Smith* v. *State,* 75 Miss. 556, 558; *Owens* v. *State,* 82 Miss. 25, 30; *Avant* v. *State,* 88 Miss. 227; *Sykes* v. *State,* 92 Miss. 250.

The trial court, in this case, treated the recommendation to mercy as surplusage and entered it accordingly; this appears to be the course taken by the trial court in the *Owens case* cited above.  In the light of this record and the above cases this verdict cannot be lightly passed over; we cite the Sykes case above and we note that the court states in its opinion in that case that the trial court

erred in not-requiring the verdict cleared up and that it (the supreme court) "would not be willing to reverse for this error alone." The language of the court here will have to be passed as *dictum;* to say the least of it, it cannot be said that the court, in the Sykes case, intended to allow more latitude in the matter of the verdict of a jury in a criminal case; the law and the reasons for the law in the Smith case, the Owens case and the Avant case, goes back to our definition of a jury verdict given above and until the jury do agree in this manner, there is no verdict.

*Geo. H. Ethridge,* for appellee.

It is insisted that the fifth instruction for the state was erroneous for the reason that it tells the jury that they may return a verdict of not guilty if warranted by the testimony. The instruction is in the form of a verdict, and the jury are told that they may return either of the following verdicts if warranted by the testimony— this embraces a finding of guilty as charged, guilty as charged with a disagreement as to the punishment, guilty as charged with the fixing of the punishment at imprisonment for life, and guilty of manslaughter, or finding of not guilty.

While it is true that a verdict of not guilty can be predicated on the absence of a sufficient amount of evidence, yet the evidence of the case warrants the instruction of not guilty where the evidence is insufficient. The verdict that a jury may return under the law must, in any case, be reached from a consideration of the evidence in the case. The consideration of the evidence in the case must, on account of the absence of a sufficient amount of probative or positive evidence, warrant a discharge. In a case, however, where several different verdicts may be rendered according as the jury may believe from the evidence is right and proper, it cannot be said that the jury can find arbitrarily on any of the different hy-

potheses. The jury must always be governed by the testimony. It is their duty to acquit when the testimony is not sufficient to convince the mind beyond a reasonable doubt that the hypothesis of guilt is established. In construing instructions in a case, the court looks at the entire instructions, both for the state and the defense and they are construed together, one as limiting, explaining or modifying another. If the jury are told, in the instructions, that they may reach a verdict of acquittal because of a want of testimony, the defendant has gotten the benefit of all rights under the law.

In instruction two for the defendant, the jury are expressly told that if any member of the jury has a reasonable doubt of the guilt of the defendant arising out of the evidence or the want of evidence, it is the duty of the jury to acquit. In instruction three, the same information is given the jury that if there is a reasonable doubt from the lack of evidence, that they should acquit the defendant. The same is in instructions four, five, seven, and thirteen, and the jury are fully instructed in the case that a lack of evidence to convict made it their duty to acquit. There could be no possible reason to believe that the jury were misled upon this point. The hypothesis of manslaughter was given in two instructions for the state and any prejudice growing out of any of the other instructions that would have eliminated manslaughter are expressly cured by these instructions where manslaughter was defined and the jury are told that if the evidence warrants a verdict of manslaughter under such definition that they could so find.

It is next insisted that the verdict of the jury is insufficient to support the judgment of conviction. The jury returned the verdict in the court finding the defendant guilty as charged and disagreed as to the punishment and asked the mercy of the court. The court, at the request of counsel for the defendant polled the jury and asked each of the jurors if that was the verdict of

the jury. The jury and each members of it stated that that was the verdict of the jury. There was no request shown in the record made to the court for any further inquiry as to what was meant by the verdict or what the attitude of the jury was with reference to the punishment and it does not appear from the record that any of the jurors would not have rendered the verdict if they had been informed that the verdict carried life imprisonment in the state penitentiary. In the cases cited by counsel for the appellant, the court in each case was requested to interrogate the jury and clear up the verdict. In the *Smith case,* 75 Miss. 556, which was the leading case in that subject, the attorney for the appellant requested the court below to interrogate the jury as to what the jury meant by asking the mercies of the court in a verdict of guilty. The court declined to do so and the defendant excepted to the court's action. The counsel for the defendant thereupon requested the court to permit him to so interrogate the jury and this was denied by the court and excepted to by the defendant. The same is true in the other cases where the question has been presented. In none of them, did the party remain silent and accept by acquiescence the verdict of the jury. The case now before the court has been settled against the contention of the appellant by the case of *Penn* v. *State,* 62 Miss. 450. In the Penn case, the jury returned the same verdict except they didn't state that they disagreed as to the punishment, and were polled and each juror responded that it was his verdict, and the court expressly held that this was a good verdict and the words, ''begging the mercy of the court'' was mere surplusage. Under the law as it now exists, a defendant gets the benefit of mercy by operation of law. Under the law as it existed when the Penn case was decided, a verdict was followed by the death sentence. The jury were expressly informed that it would be the duty of the court to sentence the defendant to a life term in the state peniten-

tiary. They were, perhaps, under the impression that for the court to do this rather than to inflict the death penalty, recommendations of mercy would be necessary or proper.

Certainly, a party cannot remain silent under the circumstances and not request the court to take any further action and then insist on appeal that, because the court did not ask the jury as to what it meant, that the verdict should be set aside, when, under all the authorities, the verdict itself is a good verdict.

REED, J., delivered the opinion of the court.

Appellant was convicted on a charge of murder and sentenced to the penitentiary for life. He killed another young man, George Bullard, by stabbing him repeatedly, some nine times, with a knife. The evidence in the case is sufficient to sustain the verdict of guilty returned by the jury. We see no error in the action of the court in refusing to direct the jury to bring in a verdict of not guilty.

The giving of the fifth instruction for the state is assigned as error. Appellant complains particularly of the concluding words of the instruction, which are as follows:

"Or they may return, if warranted by the testimony, the following verdict: 'We, the jury, find the defendant not guilty.' "

We quote the entire instruction No. 5 in order that it may be seen exactly the location and use of the words complained of therein:

"The court charges the jury for the state that they may return either of the folowing verdicts in this case if warranted by the testimony:

"First, 'We, the jury find the defendant guilty as charged.' In which event it will be the duty of the court to sentence the defendant to be hanged.

"Second. 'We, the jury, find the defendant guilty as charged but disagree as to the punishment.' In which

event it will be the duty of the court to sentence the defendant to the penitentiary for his natural life.

"Third. 'We, the jury, find the defendant guilty as charged' and fix his punishment at imprisonment in the penitentiary for life. In which event it will be the duty of the court to sentence the defendant to the state penitentiary for his natural life.

"The court charges the jury further that, if warranted by the testimony, they may return the following: 'We, the jury, find the defendant guilty of manslaughter.' Or they may return, if warranted by the testimony, the following verdict: 'We, the jury, find the defendant not guilty.'"

It is contended by counsel for appellant that the instruction "amounts to informing the jury that the defendant is required to meet the testimony, whether sufficient to convict or not, before they would be warranted in bringing in a verdict of not guilty."

This instruction is upon the form of the verdict. It tells the jury that they may return a verdict of guilty in any of several cases—three different verdicts upon conviction of murder, and a verdict upon conviction of manslaughter. In reference to manslaughter, it states that, "if warranted by the testimony," they may return the verdict of guilty of manslaughter, and then the instruction continues in the words above referred to and complained of, repeating the expression "if warranted by the testimony," and tells them that they can find the defendant not guilty. We only see in this general instruction information given to the jury of the formal wording of their verdict, and, in the event of the conviction of murder, the effect of the several different verdicts.

We must construe this instruction with all the other instructions in the case—those for the defense as well as those for the state. In order to arrive at the proper meaning of the several instructions given, all must be

considered together. We find that sixteen instructions were given in this case for the defense. At least six of these instructions clearly expresses to the jury their duty to acquit if they have a reasonable doubt of the defendant's guilt. It is fully stated in the instructions that this doubt can arise out of the evidence or want of evidence. We do not see, after consideration of all of the instructions, how the jury could have possibly been misled, or appellant prejudiced, by the words in instruction No. 5 by which they were told that they could find the defendant not guilty. We see no error in the granting of this instruction.

Another assignment of error argued in this case is:

"The court erred in receiving the vague, indefinite, and obscure verdict as a legal verdict of the jury in this case."

The following is the verdict returned by the jury:

"We, the jury, find the defendant guilty as charged but disagree as to the punishment and ask the mercies of the court."

When the verdict was returned, at the request of counsel for appellant, the jury was polled, and each juror answered that the verdict was his verdict. The record does not show that any further request was made to the court for inquiry as to what was meant by the verdict, and the attitude of the jury in reference to the punishment. The jury were plainly instructed as to the effect of the verdict they rendered. There is nothing in the record to show that the jury did not intend to convict appellant, even though his punishment might be life imprisonment. The court appears to have treated the words "and asks the mercies of the court" as surplusage. The court was correct in this. *Penn* v. *State,* 62 Miss. 450; *Sykes* v. *State,* 92 Miss. 250, 45 So. 838.

*Affirmed.*