JENKINS *v.* STATE.*

(Division B.    Dec. 12, 1927.    Suggestion of Error Overruled Jan. 9, 1928.)

[114 So. 883.  No. 26701.]

1. HOMICIDE.  *Verdict of guilty in homicide case, certifying jury could not agree on punishment, and begging mercy of court, held not void.*

   Where jury, in murder prosecution, returned verdict, "We, the jury, find the defendant guilty as charged, and certify that we cannot agree as to his punishment, and we beg the mercy of the court," and there was no request on accused's part that jury be polled to ascertain meaning of verdict, and jury had been properly instructed as to verdict which could be returned, verdict was not void, and was sufficient to sustain judgment sentencing accused to penitentiary for balance of his natural life.

2. CRIMINAL LAW.  *Where judgment overruling motion for new trial recited that, in court's opinion, motion should be sustained, effect was not to sustain motion.*

   Where judgment overruling motion for new trial recited that, in opinion of court, motion should be sustained, but that to sustain motion would be going contrary to law of state, as settled by decisions of supreme court, effect of judgment was not to sustain motion, since judgment as rendered was alone controlling, and what trial judge thought law ought to be had no effect on judgment.

   *Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 1249, n. 81 New; Homicide, 30CJ, p. 432, n. 72.

APPEAL from circuit court of Attala county.
HON. B. D. NEWSOM, Judge.

Toby Jenkins was convicted of murder, and he appeals. Affirmed.

*John F. Allen* and *C. E. Morgan,* for appellant.

Appellant cites: *Owen* v. *State,* 82 Miss. 18, 33 So. 718; *Sykes* v. *State,* 92 Miss. 247, 45 So. 838. We do not think this case would come under the rule announced in *Hayes* v. *State,* 130 Miss. 381, 94 So. 212, or *McLeod* v. *State,* 130 Miss. 83, 92 So. 828, for while in this case there were no instructions asked by either party that would authorize the jury in returning the manslaughter verdict direct, still it was left in the alternative by the use of the word "may." Still the court erred in not sustaining the motion for new trial with the knowledge he had as shown by his order, that it was manifestly not the intention of the jury to find the defendant guilty of murder, and he stated in his order that he did not feel warranted in setting aside the verdict of the jury, and therefore he was reluctant in not doing so, and he overruled the motion for new trial because he did not feel that the law would warrant his setting the verdict aside. The court would have been warranted in setting this verdict aside. Under the *Owen* and *Sykes cases, supra,* it was his duty to set this verdict aside and order new trial with the knowledge of the jury's intent clearly before him as stated by the court.

*D. H. Glass,* for appellant.

Appellant cites *Smith* v. *State,* 75 Miss. 542; *Gibson* v. *State,* 38 Miss. 310. In *Smith* v. *State,* 107 Miss. 574, the court held that in a verdict similar to the one here complained of that the extra words used in that verdict were surplusage. In the case now before the court, there is an entirely different state of facts to the facts outlined in the Smith case. In this case the jury was not polled and an inquiry was made by the trial judge of the jurors

as to their intention in rendering such verdict. This inquiry was made not with the intention of having any juror impeach his verdict but for the sole purpose of enabling the court to ascertain what was the real intention of the jury in the rendition of this cloudy verdict. The court, after making a full investigation held that the verdict rendered in this case carrying with it life imprisonment in the penitentiary, was not the true verdict of the jury. The court further held that as a result of this investigation on his part, the intention of the jury was that appellant be sentenced to the state penitentiary for a short term of years. In the Smith case cited above the jury was polled and announced to the court that the verdict rendered was their verdict, and the court held in that case: "The record does not show that any further request was made to the court for inquiry as to what was meant by the verdict and the attitude of the jury in reference to the punishment." In *Gibson* v. *State*, 38 Miss. 310, the court held: "We deem it only necessary to say in reference to this assignment that it presents no ground for reversal. The entry in the record is in accordance with the ascertained views of the jury, and it was competent for the court to make such inquiry as would enable it to comprehend the intention and will of the jury in reference to their findings, when, in the opinion of the court, there was any doubt or uncertainty in the language employed by them." In this case the trial court made inquiry of the jury and found their verdict to be different from the verdict handed in by the jury and corrected, by his own motion, the handed in verdict to correspond with the ascertained will of the jury concerning the case in question. By the above decision it will be seen that the trial court not only has the right, but it is his duty to inquire into and ascertain the true will of the jury in rendering any verdict the wording or effect of which is not made entirely clear.

It is the contention of the state that appellant herein waived his rights by not having the jury polled or raising objections to the wording of the verdict before the jury is discharged.    This contention has no foundation, for this court has repeatedly held that it is the duty of the trial court to clear up any ambiguous or cloudy wording of any verdict rendered by a jury.    More especially is this true in capital cases.    This court has held also that it was the duty of the trial court to inquire into and ascertain the true will of the jury, whether so requested to do by the defendant or not.    Then it follows that the trial court in the present case committed fatal error in not requiring the jury to make clear their meaning before being discharged.

*Jas. T. Crawley,* for appellee.

There is no similarity between the Owens and Sykes cases, cited by appellant, and the case at bar.    The verdict as given in this case is a good verdict.    The only criticism that can be made of the verdict is that it contains the following words: "And beg the mercy of the court."    The most that can be said against it is that it contains a request of the jury for mercy; to sustain the position of the appellant the verdict must be a nullity and must be so held by this court.    To sustain the position of the appellee in this case it is only necessary that the words be held to constitute surplusage.

And it is not necessary for the court to concern themselves with whether or not these words are surplusage unless they so hold, and until they have held, that the appellant had a right to raise this question by a motion for a new trial without having asked to be allowed to poll the jury at the time of the returning of the verdict; and second, without asking the jurors for an explanation of their verdict before the jury was discharged.    If the court holds that the defendant in the court below waived such rights as he might have had at that time,

then the judgment of the lower court must necessarily be affirmed. If, as the state contends, these words are held to be surplusage, then, even though the appellant may not have waived his rights by failing to present his objections at the proper time, the case must be affirmed. The question therefore naturally arises as to what is surplusage? Lord Coke defines surplusage as follows: "If the jury give a verdict of the whole issue, and of more, that which is more is surplusage and shall not stay judgment; for *utile per inutile non vitiatur.*" This definition is full and complete; no more perfect definition could be given. The verdict must find the whole issue, and if it does not there is no verdict. If it does find the whole issue and finds something in addition thereto, then the words which are additional may be disregarded and judgment may be pronounced upon that which is responsive to the issues. There are several examples given in *Traube* v. *State,* 56 Miss. 155. For instance *The People* v. *Boggs,* 20 Cal. 432, in which it was held that the insertion of the defendant's name in the verdict was unnecessary and might be treated as surplusage. In *Commonwealth* v. *Fischblatt,* 4 Metc. 354, it was held that the indictment for an assault with intent to ravish embraced a charge of simple assault, and that the following words "And improper intercourse with the said M—" might be treated as surplusage. In *Armstrong* v. *The People,* 37 Ill. 459, the jury fixed the defendant's punishment at imprisonment in the penitentiary "Together with a fine of one hundred dollars." The jury had no right to impose a fine. The court held that the words which assumed to do so might be treated as surplusage and the judgment pronounced on the balance of the verdict.

We therefore arrive at this conclusion, that if the verdict as rendered, leaving out the additional words, constitute a whole verdict, then the words as added will be considered as surplusage; that is to say, if after they are stricken out, or left out of view, there still remains a full and perfect finding, the verdict of the jury will be

affirmed.   This interpretation or definition of the word surplusage has been followed by our courts in the case of *Johnson* v. *State*, 106 Miss. 101.   In that case this verdict was returned: ''We the jury find the defendant guilty as charged and certify that we are unable to agree upon the punishment and in which event the accused will be sentenced to the penitentiary for the remainder of her natural life, or —.''   It was urged in that case that the verdict was incomplete.   The words of the verdict were taken from the third instruction for the state and were the same as those of the third paragraph of the instruction.   The verdict in effect found the appellant guilty and stated that 'the jurors were unable to agree upon her punishment.   The court held these words surplusage only; that did not render the judgment illegal, and the case was affirmed.   In this case, as in the case at bar, the verdict was complete and followed the instructions of the court as found in paragraph three of the first instruction, as set out in the facts in this case.

In *Smith* v. *State*, 107 Miss. 579, the following verdict was returned, ''We the jury find the defendant guilty as charged but disagree as to the punishment and ask the mercy of the court.''   The court in that case held that when the verdict was returned, at the request of counsel for appellant the jury was polled and each juror answered that the verdict was his verdict; the record does not show that any further request was made to the court for inquiry as to what was meant by the verdict and the attitude of the jury in reference to the punishment.   The jury were plainly instructed as to the effect of the verdict they rendered.   There is nothing in the record to show that the jury did not intend to convict the appellant, even though his punishment might be life imprisonment.   The court appears to have treated the words ''And ask the mercy of the court'' as surplusage.   The court was correct in this.

Certainly a party cannot remain silent under the circumstances and not request the court to make any fur-

ther action and then insist on appeal that, because the court did not ask the jury what it meant, that the verdict should be set aside, when under all authorities the verdict itself is a good verdict.

The judgment of the court shows that no evidence was taken before the jury was discharged, that no interrogations were made to the jury until after they were discharged, consequently, even though affidavits were presented to the court, which the record fails to disclose, they would not have been acceptable because of the fact that it would clearly constitute an attempt on the part of some jurors at least to impeach their verdict; that is, if the affidavits attempted to show that the verdict rendered was not the one the jurors intended to render. And in addition to that members of the jury orally could not have been heard to contradict their verdict for the same reason; therefore the finding of the court in his order saying that this was not the true verdict of the jury was based upon affidavits and information received by the court from jurors which could not be legally accepted, and consequently the judgment itself must be held to that extent a nullity.

*Rufus Creekmore,* Assistant Attorney-General, for appellee, adopts the brief filed herein by *Jas. T. Crawley.*

Argued orally by *C. E. Morgan* and *D. H. Glass,* for appellant, and *Jas. T. Crawley,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellant was indicted, and convicted in the circuit court of Attala county of the murder of Jack McBride, and sentenced to the penitentiary for life. From that judgment he prosecutes this appeal.

The jury returned the following verdict into court:

"We, the jury, find the defendant guilty as charged, and certify that we are unable to agree upon his punishment, and beg the mercy of the court."

Without any request on the part of appellant that the jury be polled, with a view of ascertaining the meaning of their verdict, the verdict as returned was accepted by the court, and the jury discharged. Thereupon judgment was entered by the court, sentencing appellant to the penitentiary for the balance of his natural life.

Appellant made a motion for a new trial, the principal ground of which was that the verdict returned into court by the jury was void. The court rendered the following judgment overruling appellant's motion for a new trial:

"This day came on to be heard by the court the motion of the defendant, Toby Jenkins, praying for a new trial on account of the fact that the jury returned the verdict in open court as follows: 'We, the jury, find the defendant guilty as charged, and certify that we cannot agree as to his punishment, and we beg the mercy of the court.'

"And the court, having heard the motion, and having read and heard and understood the affidavit of certain jurors in this case, and having examined members of the jury in open court immediately after they were discharged as jurors in this case, finds that this verdict was not the true verdict of the jury.

"The verdict as rendered gave to the court no alternative except a sentence of life imprisonment in the penitentiary, when it was the intention, purpose, and desire of the jury, in rendering this verdict, for the court to be lenient with the defendant and gave him a short term of years.

"The court is therefore of the opinion that this motion is well taken, and that said verdict of said jury should be set aside, and that the defendant should be granted a new trial; however, on account of former rulings of the supreme court, the court in this instance is reluctant to set said verdict aside and follow what he

thinks should be done, and for that reason he therefore overrules said motion with reluctance.

"It is therefore ordered and adjudged that said motion be and the same is hereby overruled, to which the defendant then and there excepts, and prays an appeal to the supreme court of Mississippi, which appeal is hereby granted."

Among the instructions given by the court for the state was the following:

"The court charges the jury, for the state, that in the event you find the defendant guilty of murder you may return one of the following verdicts, to-wit:

"First. 'We, the jury, find the defendant guilty as charged.' In which event it shall be the duty of the court to sentence the defendant to be hanged.

"Second. 'We, the jury, find the defendant guilty as charged, and fix his punishment at imprisonment for the rest of his natural life in the state penitentiary.' In which event it shall be the duty of the court to sentence the defendant to the state penitentiary for the rest of his natural life.

"Third. 'We, the jury, find the defendant guilty as charged, and certify that we are unable to agree on his punishment.' In which event it shall be the duty of the court to sentence the defendant to the state penitentiary for the rest of his natural life."

To sustain his position appellant relies on *Owens* v. *State,* 82 Miss. 18, 33 So. 718, 21 L. R. A. (N. S.) 782, and *Sykes* v. *State,* 92 Miss. 247, 45 So. 838. In the *Owens case* the verdict returned by the jury was in this language:

"We, the jury, find the defendant guilty as charged in the indictment, and fix the penalty to serve a term in the state penitentiary, and ask the mercy of the court."

Thereupon the court asked each juror what he meant by his verdict. Their replies showed that none of the jurors meant that the death sentence should be imposed; that they meant by the word "term" that the defendant

should not be imprisoned for life, the jurors differing as to the term of imprisonment the defendant should receive—their differences ranging from twelve months to life imprisonment. Whereupon the court entered a judgment fixing the penalty at imprisonment for life. The supreme court held that the verdict returned by the jury was insufficient to sustain the judgment of the court.

In the Sykes case the verdict returned was:

"We, the jury, find defendant guilty as charged, but cannot agree as to punishment, but do agree to ask the mercy of the court."

The court held that the verdict was indefinite, and the trial court should have required the jury to clear it up, but expressly declined to reverse the judgment upon that ground alone. The court said:

"We think it was error in the circuit judge not to have required the jury to clear up their manifestly cloudy verdict; but we would not be willing to reverse for this error alone."

We do not think those cases are decisive of the question here involved. In *Traube* v. *State,* 56 Miss. 153, the verdict returned was in this language:

"We, the jury, find the defendant guilty of manslaughter in the second degree."

A motion was made in arrest of the judgment upon the ground that the jury did not convict the defendant of any offense known to law, there being no degrees of manslaughter in this state. The motion was overruled. The court held that the words in the verdict, "guilty of manslaughter," constituted a full and complete finding by the jury of the issue submitted to them, and that the superadded words "in the second degree" were surplusage; that where a verdict contains a finding not embraced in the issue, or contains words which are without meaning and effect, and the striking out or disregarding of such irresponsive finding, or such meaningless words, leaves a perfect finding responsive to the issue, the verdict should be upheld, and judgment pronounced accordingly.

In *Johnson* v. *State,* 106 Miss. 94, 63 So. 338, the jury returned the following verdict:

"We, the jury, find the defendant guilty as charged, and certify that we are unable to agree upon the punishment, and in which event the accused will be sentenced to the penitentiary for the remainder of her natural life."

The court held that the language in the verdict, "and in which event the accused will be sentenced to the penitentiary for the remainder of her natural life," was mere surplusage, and did not render the verdict void.

In *Smith* v. *State,* 107 Miss. 574, 65 So. 498, the jury were plainly instructed by the court, as was done in the present case, as to the form and effect of the different verdicts they might render. The jury returned the following verdict:

"We, the jury, find the defendant guilty as charged, and disagree as to the punishment, and ask the mercy of the court."

When the verdict was returned, the jury were polled and answered that that was their verdict. There was no request made by the defendant that the court inquire of the jury as to what they meant by their verdict. The court held that the language in the verdict, "and ask the mercy of the court," was surplusage, and did not vitiate the verdict.

We think the reasoning of the Traube, Johnson, and Smith cases is decisive of this question against appellant's contention. The Smith case especially seems to be directly in point, and controlling.

It is argued, however, by appellant that the effect of the judgment of the court in passing on the motion for a new trial was to sustain the motion instead of overrule it. It is true that the judgment of the court in overruling the motion for a new trial recites that in the opinion of the court the motion should be sustained; but it recites, further, that to sustain the motion would be going contrary to the law of this state as settled by the decisions of the supreme court. In other words, the court

took occasion to say, in overruling the motion for a new trial, that the judge holding the court differed with the supreme court as to what the law was, but was constrained to follow the law, and therefore overruled the motion for a new trial. What the trial judge thought the law ought to be had no effect on the judgment. The judgment as rendered is alone controlling.

We are of opinion that appellant had a fair and impartial trial; that, if error was committed by the trial court, it was without harm to appellant.

*Affirmed.*